21-3089. I hope I'm pronouncing that correctly. Good morning. May it please the court, Kendra Hutchinson of Federal Defenders of New York for the appellant in this matter, Mejean Calonge. Yes, you did, Your Honor. You got it correct. I'd like to reserve two minutes for rebuttal, if Your Honor would permit me. Thank you. Your Honors, Ms. Calonge had a constitutional right to be tried in the state in the district where the crime occurred. The crime did not occur in New York, let alone here in the Southern District. Yet she was tried here. Accordingly, her conviction should be reversed and a judgment of acquittal entered. Under United States v. Rodriguez-Moreno, the leading Supreme Court case, venue is determined by the essential conduct element test, where the court must determine the conduct constituting the offense and then determine where the location of that conduct is. Do you distinguish the meaning of conduct there from results, so that even if a particular result is an element of the offense, the place where the result is felt is not the proper venue? If Your Honor is talking in terms of, like, effects-based venue, in this one? No, I'm not talking about effects. I'm talking about where there is the crime includes a conduct and a result element, which is required to be established. In that circumstance, do you think that the conduct reference in the Supreme Court's case excludes prosecuting the case in a place where one of the essential elements, the result, occurred? I don't think so, Your Honor. I'm not sure I get exactly what Your Honor is getting at here. The crime that we're talking about here requires that you do something, and it also requires that something occurs as a result. That is, that damage has to be proven. That's right. The fact that you did an intrusion or you did something intended to harm, these crimes require also that a result occur. Okay. I get where Your Honor is coming at here. And my question is, are you suggesting that when the Supreme Court says it's a conduct-based test, that it somehow suggests that the place where the result element is accomplished is not a proper venue? I don't know. I mean, I think in this instance, Your Honor, the parties accepted this below, that both of the crimes at issue, as Your Honor noted, had a conduct element, which is some sort of computer intrusion, basically. But the parties also proposed, and this is how the charge was charged to the jury, that damage was caused as a result. So the defendant was required to do it with causing damage. And so I think to the extent that that encompasses conduct, I think in this instance it is a conduct, an essential conduct element here. So the question that we're here to address is whether there is a result caused, damage to a computer, in the Southern District of New York. Through the conduct of the defendants, right, Your Honor? Well, I'm not sure what's the distinction there. I mean, isn't it clear that whatever damage occurred in this circuit, this either is or isn't damage to a computer in New York, as opposed to the place where the data is actually stored? Precisely, Your Honor. Okay. So in talking now to address the place where the data is stored, you're suggesting, I take it, that it would have been proper to venue this case in California or Virginia, both of which would be totally unforeseeable to the defendant, and one of which would be far less convenient than New York for the defendant. But as opposed to New York, where it is manifestly foreseeable, because this company that she set out to harm has two locations, the one where she worked in Florida and, to her knowledge, the one in the Southern District of New York. Well, if I might unpack, you know, Your Honor's points that you're making. Yes, it is our contention that venue here would have been proper, obviously in Florida, because that is where the intrusion occurred. But yes, that in terms of the causing damage conduct, essential conduct element, that venue would have been proper in Virginia or in California, where the actual physical data resided. The data did not reside here in the Southern District of New York, Your Honor. And the question is, does that matter? I realize there are some somewhat strained, I'd venture to say, arguments that we don't know for sure necessarily, absolutely, where someone actually was trying to access the data from. Maybe they were working from home in their pajamas in New Jersey in the suburbs. But the real point, it seems to me, the more significant point is a legal argument that it doesn't count as damage to a computer to destroy that computer's ability to access certain data that the day before this happened could have been accessed from that computer in New York. To be very clear, Your Honor, the computers before and after these intrusions were perfectly fine. These computers that the government sought to prove here in New York- Well, so were the servers in California and Virginia. They were perfectly fine. You could store any data you wanted there. Nothing is broken without those computers. Well, however, Your Honor, the deletion of the data in the servers in Virginia and California fit the statutory definition, which is the impairment of the availability of the data. This data was deleted from these servers in a physical location. Venue is tied- The data has become unavailable from New York where previously it was available from New York. Your Honor, this would be a limitless concept of venue. No, it wouldn't be a limitless concept. There are plenty of limits because there are other standards that have to be applied in order to find proper venue or constitutional venue. If you said someplace, unbeknownst to anyone, there was- or maybe not even entirely unforeseeable to anyone- there's an applicant for a job in Minnesota who is trying to put his data on the- I forget who's who- the JezHR server where 1-800-ACCOUNTANT is keeping its account, and he can't get there. That would be quite unforeseeable, it would seem to me, in the specific case of any particular state to Ms. Kalanj. And it would be enormously inconvenient and arbitrary to go there. So that would be a somewhat different situation, which would be a limit. You can't just go anywhere in the country because somebody might be trying to access this data. But where you're talking about the very institution that she is trying to harm by damaging their access to this data, and the very place that she knows is the headquarters of the company that she works for, I would submit that it's not a particularly unconstitutional thing to say, you can't bring her here. You could bring her to California, but you can't bring her here. I mean, Judge, I understand that the importation of the substantial context test here would be one of those constraints that potentially would limit the unfairness or the prejudice that occurs in a very strained venue interpretation. But that wasn't raised here. And I know this Court has been moving away from that in some regard from the application of that test. In other contexts. That's right, Your Honor. But, you know, this test is not necessary in this case. So what is it that the witness, the HR person, Gasparri, what is it that she testified about? There was no relevance objection. So what is it that she was trying to get at in your view? Your Honor, in terms of meeting this element, if that's where Your Honor is pointing to, the HR employer in this case testified to very few, very single few lines as to the purported unavailability of the data here. If we're accepting that it could be laid in here in the Southern District. Where was the data stored? She testified that the data was stored in Virginia and California, Your Honor. She testified that they did not. But how did that, was there any testimony about the effect of the data being inaccessible on the computers in New York? She testified very simply that from her computer in New York, she was unable to access the data. And why is that not enough? That is not enough, Your Honor. Particularly given the unobjected to charge. That was not enough, Your Honor, because the statute requires, for example, the establishment of a protected computer, a computer that connects to the Internet. She did not testify that she sat at her computer that was connected to the Internet, logged in, and was unable to access the data. You think she was testifying that she was unable to access the data because she pushed the wrong button on her computer? Or because she was trying to access the data from a computer that was not attached to the Internet? Your Honor, I understand that that's the inference that the government is urging upon us. That this was, this itself, this single line was sufficient to establish venue. It is not. Venue must be construed narrowly. And in this instance, her testimony was too thin and too slender of a read. The victim on 44th Street and Madison Avenue in the Southern District of New York is only one sentence. But I think that would be sufficient to satisfy the standard. I mean, here the question is, could a reasonable jury conclude by a preponderance of the evidence, no less, that the right inference to draw is that when someone is asked, what effect, if any, did the deletions and modifications have on your ability to access 1-800-JES-HR data from your computer in New York? And the answer is, I was unable to access any data in the system that was deleted. Now, again, in response to the question, that has to mean, I was unable to access any data in the system that was deleted from my computer in New York. What further, is the question, you're thinking maybe her computer in New York was not at her office in New York? Your Honor, on this testimony, that is entirely possible. And you would be perfectly entitled to argue that to the jury. Yeah. That, hey, this isn't enough. And the jury would duly consider that and decide whether they thought that it was, and the government would then come back and say, no, of course, the obvious inference is that she's at her office in New York. Where else in New York is she supposed to be? And she also, by the way, testified that other employees located in New York and Florida no longer had access to 1-800-JES-HR. I suppose you could say that is hearsay. On the other hand, no one objected to that testimony, as far as I'm aware. So she and other employees, and you would be arguing to the jury, and God bless you if you tried, that you should, you cannot conclude from that that any of these people in New York who were trying to access the data were actually at the office. Good luck. I mean, you know, by the way, that wasn't argued to the jury in this case, and I would submit for good reason. Because who thinks the jury is going to buy that? Well, Your Honor, Venue was argued to the jury, as I understand it. That was, you know, an element that was submitted to them upon the defense's request. So they had the charge not objected to. They had the evidence of Gaspari's testimony. And was there an argument made about Venue? To the rule 29? No, no, no, to the jury. I believe there was, Your Honor, but I can't vouch for that, so I'm not going to, I won't. But, you know, I think it's really important to get back to the bigger principle here. And I understand Your Honor's point about the reasonable foreseeability test and using that here as a way to trammel it. But Venue is a physical concept. When it was enshrined in our Constitution, it was, you know, it was intended to prevent against the abuses of the crown. It's even in the Declaration of Independence, by the way. I know that because I once persuaded this court that a case was improperly Venued in the Eastern District of New York because it should have been Venued in the Southern District of New York. So I'm not unsympathetic. I'm not unaware of the deep significance of Venue as a constitutional matter in our tradition. And I can tell that, Your Honor, because you're very interested in this issue. And I understand that you believe that there are ways to shape this such that it is not unfair to a defendant. However, you know, Venue is a physical concept, and I believe that these statutes were written with that in mind. They were written in 1996, you know, these particular versions. And the damage provision itself does not refer to harm to people, you know, to harm to victims. Well, but then the question is, is this a question of – I mean, I could see an argument that this is not about Venue. This is about sufficiency of the evidence to prove harm. If you want to say the computer has to be broken, its software or hardware has to be made less effective, that's an argument that one could make. It would work, but that's not the argument here. If it is the case that denying a computer access to data, an Internet-connected computer, to access to data that it regularly accesses via the Internet, if that is harm under the statute, then where that occurs, it seems to me, would be as good a place to put the case as where the data was deleted. Your Honor, to sort of go back to the damage statute itself, the damage definition, again, it speaks in terms of the computer, not in terms of a person or harm. And I would note that it's the sentencing provisions. But the person is the computer that can't access the data. The person sitting at the keyboard can't access the data because his or her computer is unable to access the data since the data is gone. And I also understand that Your Honor believes that this concept of Venue could be limited constitutionally by other doctrines. On the other hand, for example, a hacker who just hacks into, willy-nilly for the pure joy of it, into, for example, ECF, absolutely no desire to harm any one individual person, just thinks it's fun. And then all of a sudden, all across the country, every single court employee and every single federal defender in AUSA is unable to log into their ECF PACER account. There's absolutely no intent to harm any one of them. There's no intent to do anything like that. Venue would be proper under this in every single one of those districts. Not necessarily. It would depend on whether that was foreseeable to that person. And I think you'd have a pretty good argument, too, that putting this in some place that was abusive because it was significantly inconvenient for no good reason would also be problematic. But that's not this case. If that happens, we have tools to deal with that. But this case is quite different from that. This is a headquarters office. And I understand that, and I can see that I'm very above my time here. But I just, you know, I- Why don't you reserve some time for rebuttal? We'll hear from the government and we'll hear- Thank you very much, Your Honor. Good morning. May it please the Court. I am Timothy Capozzi, and I represent the government in this case. All right. Mr. Capozzi, you can proceed. Again, I'm Timothy Capozzi. I represent the government in this case. I also represented the government below. Your Honors, the defendant is asking this Court to draw every inference in her favor instead of applying the law that applies. This Court is bound to draw every reasonable inference in favor of the jury's verdict. The evidence, and Judge Lynch pointed to some of it, that was adduced at trial was substantial in terms of the effects here in the Southern District. Substantial might be a stretch, but it was Ms. Gasparri, right? Primarily Ms. Gasparri, and her testimony was corroborated by the logs, the computer logs which reflected the names of the employees who she testified were unable to access the system following the defendant's actions. Judge Lynch pointed to appendix page 171 where Ms. Gasparri was asked point blank, where were the employees who no longer had access located? Answer, New York and Florida. Where in New York? At the company's headquarters. Let me ask you this. 260 Madison. Suppose the employees were working remotely, one of them regularly accessed this information on a laptop from her home in Sun Valley, Idaho. Couldn't get on. Would Idaho have been a proper venue? Your Honor, there's no dispute that venue could be proper in multiple locations in this case. Idaho in my hypothetical. In the analysis I think would be looking at the statute. And if the statute fit, you would look and you would say it was damage committed. Idaho in my hypothetical. You don't want to concede that there is any check at all on that? Really? I mean the government's position is we could actually put this person, try this person in Idaho under those circumstances. You don't dispute you could try it in California, but Idaho. Your Honor, it would depend on, I think, the evidence that was deduced. If there was an employee who this, for example, if this defendant knew that that person worked there. A regular employee regularly worked on a laptop. And sometimes wasn't in the office in New York. And when he or she was other places, she did her work in terms of vetting these applicants or whatever was done from her sun bathed porch in Sun Valley, Idaho. Under the government's theory, could be tried in the, I don't know if there's a northern district of Idaho. I think there's only one. There's only one in Idaho. Your Honor, the question. You don't even want to say only if Ms. Colonge knew that that particular person usually worked from her home in Sun Valley, Idaho. You want to say even if she would have no idea where any of these people were, you could still bring her to Idaho? Certainly the argument is much stronger if she had some knowledge that the person was in Idaho. We're focused on what the statute says. And what the statute says is that and with the understanding of Second Circuit law about effects based. Let me change the hypothetical. Instead of Idaho, let's deal with Wyoming. Wyoming? Yeah. Also one district. Also one district.  By changing it from Idaho to Wyoming, maybe I can get you to answer my question. I agree that the analysis would be the same whether it was Idaho or Wyoming. The problem I'm wrestling with here is that we have a theory of venue that in 2023 makes absolutely no sense. Given what you all know were the concerns animating the constitutional restrictions on venue and so forth, this is crazy. Your Honor, we would agree and I don't understand this court to have necessarily come out definitively as to whether foreseeability is necessarily a requirement. But that could be a check. In some securities court cases, this court has talked about foreseeability. And I think this court has before been presented with this type of hypothetical on the row case in 2003 or 2004, which was a child pornography case at which at the district court level, the defendant made an argument. If I can be hauled into court in the Southern District of New York because my advertisements for child pornography reached to the Southern District of New York, I could be brought into court anywhere in the 50 states. And this court- Can you unpackage the language of the statute for me? So when it says cause damage to a protected computer, what exactly does that mean? Because that's what I've been focused on. And that was the jury charge that I take it both sides agreed to. What is damage to a protected computer? So when I get on my computer here in this courthouse and I can't access because someone has tried to tamper with, I don't know, some website that I routinely see and I can't access it, is that damage to my computer? And then what does a protected computer mean? Your Honor, damage is a defined term under the- Yes. The statute. And as you're familiar with the papers, defined to mean any impairment- Read the definition is the next step in that argument. You say damage is a protected term under the statute and it is defined as- It's defined as any impairment to the integrity or availability of data, a program, a system, or information. To the availability of data. Correct. Counts as damage. Correct. So that's a very broad, very, very broad definition. What is a protected computer? A protected computer under the statute and under this court's authority is basically any computer connected to the Internet. And so the computers at 1-800-ACCOUNTANT in 260 Madison that are connected to the Internet are protected computers. And there was no dispute- Go back to, I guess, my- there are many hypotheticals going, but I'm here on one of these floors and my computer is connected to the Internet. So it's a protected computer. Correct, Your Honor. And I can't access whatever the website is that I need to access. And that's the requisite damage in your view? Now there's a separate issue about foreseeability that has been the subject of a lot of discussion. But set that aside for one second because that's a limiting principle. According to the government, based on the language of the statute, that would be a violation of 1030-whatever it is. Well, there are other elements to the statute. But assuming those other elements were satisfied- I'm just focused on the damage. Then that would be damage under the statute, yes. You could also prosecute any number of counts, I suppose, for all the computers that were damaged if that website went down. But I'm not sure that that matters. You don't have to answer that in this case. Exactly, exactly. And when you've made a rather reasonable choice of venue and a rather reasonable number of counts. And to return to my favorite hypothetical. One of these people could take a laptop to any state in the country and try to get on the-connect to the internet, try to get some data. And under the government's theory, venue would be appropriate in that particular state. The defendant in that case could make a motion to transfer the venue. This court could- No, that wouldn't be it. So what is- where are we as we sit here in 2023 on this concept of venue? What limiting principle can we incorporate into a generally understood rule of law? This court, to my knowledge, hasn't yet definitively adopted the foreseeability. Here, the government would clearly meet the foreseeability if it were applied to this case. Should we do that? Would that help you? It would make my answers to these questions easier, I think. Of course, we could also reserve that question yet again on the theory that if that is a requirement, it is met here. And if there ever is a case where the Sovereign District of New York reaches too far and finds some unpredictable, unforeseeable place, then we would have a case that presents that issue. You're aware of the fact that if, Mr. Capozzi, that if a crime talks about mailing something, sending something through the mails, there are cases saying it can be prosecuted in any district through which the mail moves. If it's not mail but an instrumentality of interstate commerce like FedEx, then maybe everything that you send by FedEx winds up getting prosecuted in Nashville, where their hub is. There are lots of these venue situations that if the government abuses them, one might be reaching for various limiting principles. But cases have been prosecuted in Nashville on exactly that theory, including the Deep Throat obscenity case way back in the 1970s or 60s, 70s, I think. But I agree that, I'm inclined to agree that we don't have to deal with that here because there was really no issue of foreseeability. And that's not, as I understand it, the argument that's being made very well by the Appellant's Council, given the fact that the headquarters was at 260 Madison. That's an issue. I think, to me, it's what is causing damage? And it's an unobjected to jury charge, causing damage to a protected computer. Anyway, thank you very much. Thank you, Ron. Thank you. Thank you. But maybe I've misunderstood the Appellant's argument. I don't have it in mind. What sentence did your client receive? She received a time served sentence, Your Honor. Which was how long? It was about a day. When she was arrested. That's right. She was arrested in Florida, brought here, and charged here. But I will be brief here because we've kept the court for quite a long time. But speaking of equities and speaking about the issue of reasonable foreseeability and the fairness to the defendant, again, this was not raised below. This was not litigated below. So this court does not really have a fulsome record on it. We just have the trial courts aside, the district courts aside, and this court's questions about whether that's a limiting principle that should apply here. But it is worth noting that Ms. Polange is a resident, a lifelong resident of Florida. She has two single kids. She's a single mother. I'm sorry. And she parents them. And this was not a particularly easy trial to sit through here. At least I completely understand. I'm obviously very focused on the language. And it's an unobjected to charge. Was there a discussion, by the way, in the lead up to the final charge about what damages to a protected computer meant? Yes, Your Honor. In fact, the defense actually pushed for this as a venue hook, as it were, right, rather than just the straight-up Sands charge. And the defense pushed for this because the defense contention in this – When you say venue hook, I didn't quite follow. What do you mean? So the defense requested that damage to the protected computer be added in specifically and submitted to the jury because it was the defense contention throughout the trial that the protected computer could only be in Virginia or California and that the damage could only be physical damage to physical deletions from these computers. But you heard the government's response to my reading before of what a protected computer is. It's a very broad definition. Well, that's right. As this court has held, it is any computer connected to the internet. And really, that could be any phone or any – Well, but it's also not just a question of protected computer is very broad. I mean some of these terms in the statute, if you just read it, you might say a protected computer is one that has appropriate firewalls on it. You might say that damage to the computer is when the computer is rendered unable to function because something has damaged its operating system. Some hacker has destroyed its hard drive by putting a worm into the computer. But when you read the definitions, does it not become fairly clear that, first of all, Congress meant that a protected computer, probably for interstate commerce type legislative jurisdictional reasons, is anything connected to the internet? A computer that sits on a table and does nothing but work on its own systems in its own place is not covered by this statute. And then it also specifically defined damage to include making data unavailable. That's what it says. Now, maybe that's very broad. Maybe that has ramifications for what is appropriate venue and so on. But are you contending that there was no damage within the meaning of the statute to the computers in New York? We are, Your Honor. We are because we contend that this – Which is one of the definitions of damage. Because that would make the – making venue – conferring venue through that would be unconstitutional, Your Honor. That's the argument that that would be unconstitutional for venue reasons. That is not an argument that there was no damage to the computer, right? I mean, suppose she actually acted in New York so you didn't have a venue problem. And the damage that was caused was precisely this damage. And the government, for some reason, neglected to point to whatever happened in California or Virginia and just left it as the computers in New York were not damaged. Because it's wrong to say they were damaged because they couldn't access the data they usually access via the internet. You'd be saying, right, insufficient evidence, no crime was proven. No venue problem, but no crime was proven because no one explained what computer was damaged other than the ones that, on your theory, are not damaged? Yes, Your Honor. We would be because the – this isn't even like a software application that lives – If Ms. Gallange had been located in New York, you would – or at least say she did her act. She worked in New York, but then she got fired and she went home to her house in New Jersey and did exactly what she did here. The case could not be venued in New York, but could be venued in California. Or New Jersey or Virginia where those computers reside. Your Honor, the thing here is that what we have is a web applicant. We have someone going on a website and just typing in their login information. And the real problem with this is how we started this whole argument, and as Your Honor was bringing up, this is a limitless – a completely limitless venue. Only if we make it limitless. Only if we don't apply any limits to it. And the government isn't conceding any of it. This could have been venued in Wyoming. Yeah, well, it could have been done. A paralegal – someone could have called a paralegal in Wyoming and been like, he tried to get on Jazz HR, the third-party vendor. And they couldn't have done it. And then this would have been venued in Wyoming as well. I guess the Tenth Circuit or somebody would have to decide if that was appropriate. I think it is worth – Here was the foreseeable – again, I'm just going to go back to my question, which is here, I don't know that we've got to deal with foreseeability. Because the headquarters – there are only a few offices, but I take it – the headquarters are on Madison Avenue in New York. And it's an HR issue. Jazz HR is an HR database, is that correct? Yes, it is, Your Honor. It's an applicant tracking – it's one of many that they used. But, yes. Thank you very much. Thank you very much, Your Honor. Fully reserved decision. Thank you both. Very well.